UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| DEFENSE OF FREEDOM INSTITUTE FOR POLICY STUDIES, INC. | Case No. 23-cv-_____ |
| *Plaintiff,* | |
| v. | COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF |
| U.S. DEPARTMENT OF EDUCATION | |
| *Defendant.* | |

## COMPLAINT

Plaintiff, Defense of Freedom Institute for Policy Studies ("DFI"), by its undersigned attorneys, brings this action against defendant, U.S. Department of Education (the "Department"), and alleges as follows:

### INTRODUCTION

1.     On March 28, 2022, DFI served two requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, on the Department. Notwithstanding the passage of over seventeen months, and its representations that it expected to provide "a large amount of responsive

1

records," the Department has not produced documents responsive to one request and produced merely four that are responsive to the other.

2.     DFI's FOIA requests seek records relating to the Department's role in diluting the federal Desegregation of Public Education program, the focus of which the Department has changed to "sex desegregation" and other forms of "equity-based" social agendas, including instruction on systemic racism and thwarting parental rights.  Millions of taxpayer dollars have flowed from the Department in grants to "Equity Assistance Centers," whose mission is to further the program's new focus.  This shift not only expands the program beyond its original purpose – namely, assisting schools  in achieving and ensuring racial desegregation -- it does so by exceeding the Department's legal authority.

3.     DFI's FOIA requests are calculated to demonstrate the Department's failure to stay within statutory boundaries and its own guidelines for a program with an important, focused mission.  The Department's utter failure to provide a complete production of records responsive to DFI's FOIA requests underscores the apparent, impermissible overreach by the Department.

4.     DFI now seeks relief from this Court under FOIA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring the

2

Department in violation of its legal obligations under FOIA, enjoining it from continuing to withhold responsive records, and ordering the immediate production of all responsive agency records.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 and may grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.     Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) because DFI resides in the District, including maintaining an office in Titusville, Florida.

7.     Because the Government has failed to comply with the applicable time-limit provisions of FOIA, DFI is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to the requested relief from this Court.

## PARTIES

8.     DFI is an independent, nonprofit organization that is tax exempt pursuant to I.R.C. § 501(c)(3) and organized and existing under the laws of the Commonwealth of Virginia.  DFI's registered agent is located at 250 Browns Hill Court, Midlothian, VA 23114.  DFI is comprised of former senior Department officials who founded DFI to defend and advance freedom and

opportunity for every American family, student, entrepreneur, and worker, and to protect civil and constitutional rights at school and in the workplace. To achieve this mission, DFI's efforts include, inter alia, submitting FOIA requests to federal agencies to obtain records relating to the consideration and implementation of policies imposed by the federal government and its officials on the American people, and then posting records produced by the agencies online for public review.

9.     The Department is a department of the executive branch of the federal government within the meaning of 5 U.S.C. § 552(f)(1), with its headquarters at 400 Maryland Avenue, S.W., Washington, DC 20202.   The Department has possession, custody, and control of the records responsive to DFI's two FOIA requests.

## STATEMENT OF FACTS
### The Attorney General's FOIA Disclosure Directive

10.     In a March 15, 2022 directive to executive departments and agencies (including the Department), Attorney General Merrick Garland emphasized that FOIA's "'basic purpose . . . is to ensure an informed citizenry,' which is 'vital to the functioning of a democratic society [and] needed to check against corruption and to hold the governors accountable to the governed.'" Memorandum for Heads of Executive Departments and Agencies: Freedom of

Information Act Guidelines, Memo Att'y Gen (2022), https://rb.gy/znu3f (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)) ("Garland Directive").

11.     The Garland Directive emphasized the "Presumption of Openness" required of federal departments and agencies, including the Department, noting that responsive records may only be withheld "if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates; or (2) disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A)(i)." *Id.* at 1.   Attorney General Garland warned agencies that requested "[i]nformation that might technically fall within an exemption should not be withheld from a FOIA requester unless the agency can identify a foreseeable harm or legal bar to disclosure" and that "[i]n case of doubt, openness should prevail." *Id.*   Attorney General Garland instructed further that pursuant to 5 U.S.C. § 552(a)(8)(A)(ii), when "an agency determines that it cannot make full disclosure of a requested record, FOIA requires that it 'consider whether partial disclosure of information is possible' and 'take reasonable steps necessary to segregate and release nonexempt information.'" *Id.*

## **DFI's First FOIA Request**

12.     On March 28, 2022, DFI submitted to the Department a FOIA request (the "First Request," attached hereto as **Exhibit A-1**). The First Request was for particular records relating to the Department's award of grants to and cooperative agreements with "Equity Assistance Centers."

13.     Despite the passage of 527 days and the Department's representations to DFI that production of records was underway, the Department has failed to produce records in response to DFI's First Request.

14.     In its First Request, DFI sought the following records:

> All non-deliberative communications of ED officials (see "Custodians" *infra*) within the Office of the Secretary, Office of the Deputy Secretary, Office for Civil Rights, Office of the General Counsel, Office of Communications and Outreach, Office of Legislation and Congressional Affairs, particularly communications sent by, copied to, or received by ED officials from January 1, 2015, through the date the search is conducted, which reference any of the following:
>
> a. Equity Assistance Center, Equity Assistance Centers, EAC, or EACs
> b. Desegregation Assistance Centers, Desegregation Centers, DAC, or DACs
> c. 84.004D
> d. Civil Rights Training and Advisory Service or Civil Rights Training and Advisory Services
> e. 34 CFR 270
> f. 42 USC 2000c
> g. WestEd
> h. Brown University – The Education Alliance Equity and Diversity Projects

6

      i.  Mid-Atlantic Equity Consortium
      j.  Intercultural      Development      Research Association
      k.  Kansas State University – College of Education, Dean of Education
      l.  Education Northwest
      m. Southeastern Equity Alliance, Inc.
      n.  Touro College – School of Education, Lander Center for Education Research
      o.  Metropolitan State College of Denver
      p.  Indiana University – Great Lakes Equity Center

Each application received by ED for a program award grant (Program No. 84.004D), whether or not awarded, to fund "Equity Assistance Center(s)" or "Desegregation Assistance Center(s)" or "Training and Advisory Services," authorized under title IV of the Civil Rights Act of 1964, 42. U.S.C. 2000c-2000c2, 2000c5, and 34 CFR part 270 for fiscal years 2016 (Federal Register Document Number 2016-16809, published July 18, 2016), 2017, 2018, 2019, 2020, 2021, through the present (Federal Register Document Number 2022-03208, published February 15, 2022) from July 18, 2016, through the date the search is conducted.

All records of ED officials (see "Custodians" *infra*) related to the receipt, evaluation, processing, and award or declination of award for each grant application identified in Item 2 [that is, the preceding paragraph].  "Records" should include but not be limited to electronic mail ("email"), texts, letters, memoranda, annual performance reports, and other documentation regarding applications received by ED from July 18, 2016, through the date the search is conducted.

Each cooperative agreement executed between ED/OESE and award grant recipient (*i.e.*, each entity to which an EAC grant was awarded) pursuant to the program described in Item 2 [that is, the second paragraph from top, *supra*], from July 18, 2016, through the date the search is conducted, including but not limited to the cooperative agreements (and any

modifications or revisions to those agreements) with each of the following:

    a.  WestEd

    b.  Brown University – The Education Alliance Equity and Diversity Projects

    c.  Mid-Atlantic Equity Consortium

    d.  Intercultural Development Research Association

    e.  Kansas State University – College of Education, Dean of Education

    f.  Education Northwest

    g.  Southeastern Equity Alliance, Inc.

    h.  Touro College – School of Education, Lander Center for Education Research

    i.  Metropolitan State College of Denver

    j.  Indiana University – Great Lakes Equity Center

All records of ED officials (see "Custodians" *infra*), including but not limited to electronic mail ("email"), texts, letters, memoranda, and other documentation, which provided the evidentiary basis (and sources of such evidentiary basis) upon which ED relied in its Funding Opportunity Description, published in the Federal Register on February 15, 2022 (Document Number 2022-03208), indicating that "instances of online bullying related to race or ethnicity as a result of an increase in virtual instruction during the pandemic" had occurred, from January 20, 2021, through the date the search is conducted.

All non-deliberative communications of ED officials (see "Custodians" *infra*), (particularly communications sent by, copied to, or received by ED officials within the Office of the Secretary, Office of the Deputy Secretary, Office for Civil Rights, Office of the General Counsel, Office of Communications and Outreach, Office of Legislation and Congressional Affairs), from January 20, 2021, through the date the search is conducted, which reference:

     a. Withdrawal of Notice Inviting Applications and Cancellation of the Competition for the Equity Assistance Centers Program

     b. 86 CFR 2653

     c. Assistance Listing number 84.004D

     d. 84.004D

*See* Exhibit A-1, at 5-6.

15. The release of these records is in the public interest because their disclosure will inform the American people about the Department's diversion of funding directed at racial desegregation of schools to expanding and refocusing the program on new "equity-based" social agendas relating to, for example, gender and sexual preferences.

16. On March 29, 2022, the Department provided an electronic FOIA "Request Acknowledgement" notification to DFI, confirming receipt of the First Request and assigning it tracking number 22-02360-F. The Acknowledgement Letter indicated that the First Request had been "forwarded to the primary responsible office(s) for action." (The Department's FOIA Acknowledgement Letter is attached hereto as **Exhibit A-2**.)

17. On April 26, 2022, the Department electronically notified DFI in its "20-Day Status Notification" that "[d]ue to the unusual circumstances that exist with your FOIA requests as defined by U.S.C. § 552(a)(6)(B)(i)(ii), the Department will not be able to respond by the 20 day statutory requirement.

The scope of your FOIA requests requires the Department to conduct a vast search across multiple program offices, which we anticipate will result in a large amount of responsive records." (The Department's 20-Day Status Notification is attached hereto as **Exhibit A-3**.) The Department has never identified any of the "unusual circumstances" it cited as justification for its failure to meet the statutory deadline for producing responsive records.

18.    On June 14, 2022, DFI emailed the Department's Chief FOIA Officer, Dr. Deborah O. Moore, to "check on the production timetable for three particular FOIA requests" including "22-02360-F," noting that the request was for "ED Records Related to Equity Assistance Centers." (The Production Request Inquiry is attached hereto as **Exhibit A-4**.)

19.    On June 15, 2022, the Department emailed its reply, stating that its Office of Elementary and Secondary Education "is working on the non-administrative elements . . . and I'd estimate the . . . end of July timeframe" for production. (The Department's Response to Production Request Inquiry is attached hereto as **Exhibit A-5**.)

20.    At a July 7, 2022 virtual meeting organized by the Department to discuss three DFI FOIA requests, including the First Request, DFI met with the Department's Chief FOIA Officer and the Director of the Department's FOIA Service Center, Gregory A. Smith.

10

21.    On July 18, 2022, the Department's Chief FOIA Officer sent a follow-up email that described the July 7 discussion and included proposals to expedite the Department's production of responsive records to DFI.  (The Department's Proposed Narrowing of Initial Record Search is attached hereto  as **Exhibit A-6**.)

22.    On July 19, 2022, DFI responded that the Department's Chief FOIA Officer's July 18, 2022 email "accurately reflects our discussion and efforts to begin production of the requested records. As mentioned in the discussion, the [responsive] cooperative agreements should be easily accessed (and there are very few of them), so it is DFI's hope that those would be produced quickly at this point.  Thanks, again!" (Response to Department's Proposed Initial Records Search is attached hereto as **Exhibit A-7**).

23.    On July 28, 2022, DFI emailed the Department's Chief FOIA Officer and the FOIA Service Center Director to "check on the status of these records (particularly the Cooperative Agreements, as they are relatively discrete records [that] should be more easily provided)."  (The Production Request Inquiry is attached hereto as **Exhibit A-8**.)

24.    On July 28, 2022, the Department's Chief FOIA Officer  emailed a reply to DFI, indicating that "[r]egarding the status of your requests, including the cooperative agreements, we are working with the program offices and

11

[subject matter experts] to obtain any responsive records so that we can get them to you as soon as possible." (The Department's Response to DFI's Production Request Inquiry is attached hereto as **Exhibit A-9**.)

25.     On August 22, 2022, DFI sent an additional email inquiry to the Department's Chief FOIA Officer and the FOIA Service Center Director stating as follows:

> Good morning, Deborah,
>
> Can you please update me on the status of the production of the Equity Assistance Center cooperative agreements?
>
> These are among the most discrete, readily-identifiable (and producible) records that ED controls.
>
> DFI submitted its FOIA request for these records to ED on March 28, 2022.
>
> DFI has worked with ED to identify such records and had expected that production would have occurred quite some time ago.
>
> Thanks for your assistance!

(The Production Request Inquiry is attached hereto as **Exhibit A-10**.)

26.     On August 22, 2022, the Department's FOIA Service Center Director emailed a reply "acknowledging and responding to your inquiry" and noting that while processing efforts have continued, "[w]e regret that we have not been able to provide definitive dates up to this point; however, we hope to respond to select elements soon. We appreciate your/DFI's continued patience

12

as the Department processes these requests."  (The Response to Production Request Inquiry is attached hereto as **Exhibit A-11**.)

27.    To date, the Department has failed to provide records responsive to DFI's First Request, despite DFI's efforts to assist the Department by meeting with its representatives and clarifying the scope of the request.

28.    The Department has failed to explain or otherwise justify its failure to provide responsive records to DFI.

29.    Notwithstanding the Department's commitment in its April 26, 2022 "20-Day Status Notification" to provide responsive records on a rolling basis, it has failed to explain or otherwise justify its failure to provide responsive records, either on a rolling basis or otherwise.

30.    As a result of the Department's failure to timely or otherwise provide records responsive to DFI's First Request in accordance with the Department's statutory obligations, DFI has constructively exhausted its administrative remedies.  DFI thus seeks immediate judicial review of this matter.

## DFI's Second FOIA Request

31.     Also on March 28, 2022, DFI submitted a second FOIA request (the "Second Request," attached hereto as **Exhibit B-1**) to the Department.

32.     Like the First Request, the Second Request was for particular records relating to the Department's award of grants to and cooperative agreements with "Equity Assistance Centers," but the Second Request focused on the Department's Office of Elementary and Secondary Education ("OESE"), which has direct responsibility for managing the "Equity Assistance Center" grant program.

33.     Despite the passage of 527 days and the Department's representation to DFI that production of responsive records was in process, only four records have been produced, and the Department has otherwise failed to produce records in response to DFI's Second Request.

34.     The Second Request was largely identical to the First Request. One significant difference was that one category in the Second Request sought more narrowly "[a]ll non-deliberative communications of ED officials (see 'Custodians' *infra*) *within the Office of Elementary and Secondary Education ('OESE')*, particularly communications sent by, copied to, or received by *ED OESE officials* from January 1, 2015, through the date the search is conducted" (emphasis added), while the First Request sought such communications from

14

other Department offices – namely, "*the Office of the Secretary, Office of the Deputy Secretary, Office for Civil Rights, Office of the General Counsel, Office of Communications and Outreach, Office of Legislation and Congressional Affairs*," (emphasis added). *Compare* Exhibit A-1 at 5 with Exhibit B-1 at 5.

35.     Similarly, whereas another category in the Second Request sought "[a]ll non-deliberative communications of ED officials (see 'Custodians' *infra*) *within OESE from November 3, 2020* through the date the search is conducted" (emphasis added), the First Request sought such communications "of ED officials (see 'Custodians' *infra*), *(particularly communications sent by, copied to, or received by ED officials within the Office of the Secretary, Office of the Deputy Secretary, Office for Civil Rights, Office of the General Counsel, Office of Communications and Outreach, Office of Legislation and Congressional Affairs), from January 20, 2021*, through the date the search is conducted" (emphasis added). *Compare* Exhibit A-1 at 5 with Exhibit B-1 at 5.

36.     A final significant difference was that the Second Request sought two additional categories of documents not included in the First Request:

> A list of the 36 State educational agencies ("SEAs"), 196 local educational agencies ("LEAs"), and 277 schools in 49 states and territories receiving targeted and intensive assistance from Equity Assistance Centers in fiscal year 2020, as stated on page C-48 of the document entitled "School Improvement Programs" accessible on ED's website.

All documents identifying the Midwestern state and the EAC that "helped to change the way nearly 330,000 elementary, middle, and high school students learn social studies," as stated on page C-49 of the document entitled "School Improvements Programs" accessible on ED's website.

*Compare* Exhibit A-1 at 5-6 with Exhibit B-1 at 5-7.

37.     The release of these records is in the public interest because their disclosure will inform the American people about the Department's diversion of funding directed at racial desegregation to expanding and refocusing the program on new "equity-based" social agendas relating to, for example, gender and sexual preferences that are far outside the Department's statutory authority.

38.     On March 29, 2022, the Department provided an electronic FOIA "Request Acknowledgement" notification to DFI, confirming receipt of the Second Request and assigning it tracking number 22-02358-F.   The Acknowledgement Letter indicated that the Second Request had been "forwarded to the primary responsible office(s) for action."  (The Department's FOIA Request Acknowledgement is attached hereto as **Exhibit B-2**.)

39.     On April 26, 2022, the Department electronically notified DFI in its "20-Day Status Notification" that "[d]ue to the unusual circumstances that exist with your FOIA requests as defined by U.S.C. § 552(a)(6)(B)(i)(ii), the Department will not be able to respond by the 20 day statutory requirement.

16

The scope of your FOIA requests requires the Department to conduct a vast search across multiple program offices, which we anticipate will result in a large amount of responsive records." (The Department's 20-Day Status Notification is attached hereto as **Exhibit B-3**.) The Department has never identified any of the "unusual circumstances" it cited as justification for its failure to meet the statutory deadline for producing responsive records.

40. On June 14, 2022, DFI emailed the Department's Chief FOIA Officer to "check on the production timetable for three particular FOIA requests" including "22-02358-F," noting that the request was for "OESE Records Related to Equity Assistance Centers (20 day notification letter issued April 26, 2022) (FOIA request submitted March 28, 2022)." *See* Exhibit A-3.

41. On June 15, 2022, the Department emailed a reply, stating that "OESE continues its search for responsive documents for several elements of this requests [sic], and I'd estimate end of July for interim release of those discrete items not requiring and [sic] admin search, but of course we will do interims for documents as they become available . . . ." *See* Exhibit A-5.

42. The Second Request was discussed at the July 7, 2022 virtual meeting between DFI and the Department referenced in Paragraph 20 above.

43. On July 18, 2022, the Department's Chief FOIA Officer sent a follow-up email that described the July 7 discussion and included proposals to

17

expedite the Department's production of responsive records to DFI. *See* Exhibit A-6.

44.   On July 28, 2022, DFI sent an email inquiry to the Department's Chief FOIA Officer and its FOIA Service Center Director to "check on the status of these records (particularly the Cooperative Agreements, as they are relatively discrete records [that] should be more easily provided)." *See* Exhibit A-8.

45.   On July 28, 2022, the Department's Chief FOIA Officer  emailed a reply to DFI, indicating that "[r]egarding the status of your requests, including the cooperative agreements, we are working with the program offices and [subject matter experts] to obtain any responsive records so that we can get them to you as soon as possible." *See* Exhibit A-9.

46.   On August 22, 2022, DFI sent an additional email inquiry to the Department's Chief FOIA Officer and its FOIA Service Center Director stating as follows:

> Good morning, Deborah,
>
> Can you please update me on the status of the production of the Equity Assistance Center cooperative agreements?
>
> These are among the most discrete, readily-identifiable (and producible) records that ED controls.

DFI submitted its FOIA request for these records to ED on March 28, 2022.

DFI has worked with ED to identity such records and had expected that production would have occurred quite some time ago.

Thanks for your assistance!

*See* Exhibit A-10.

47.     On August 22, 2022, the Department's FOIA Service Center Director sent a reply email "acknowledging and responding to your inquiry" and noting that while processing efforts have continued, "[w]e regret that we have not been able to provide definitive dates up to this point; however, we hope to respond to select elements soon. We appreciate your/DFI's continued patience as the Department processes these requests." *See* Exhibit A-11.

48.     On October 17, 2022, in an "interim response" to DFI's Second Request, the Department provided DFI with four responsive records. (The Department's Interim Records Provision in response to the Second Request is attached hereto as **Exhibit B-4**.)  Specifically, the Department produced four cooperative agreements between the Department and award recipients that are partially responsive to the fourth category of requests in the Second Request.

49.     Upon information and belief, the Department is withholding a large number of additional documents responsive to the fourth category of requests in the Second Request.  In its October 17, 2022 communication, the Department noted it was still "continuing to process your request," and that it would provide "any additional documents under a separate cover letter."  *See* Exhibit B-4 at 3.

50.     Other than the four cooperative agreements, the Department has failed to provide records responsive to any of the other seven categories in the Second Request, either in whole or in part.

51.     Since its October 17, 2022 interim production of the four cooperative agreements, the Department has failed to explain or otherwise justify its failure to complete its production.

52.     As a result of the Department's failure to timely or otherwise provide on more than an interim basis more than four records responsive to DFI in accord with its statutory obligations, DFI has now constructively exhausted its administrative remedies.  DFI thus seeks immediate judicial review of the matter.

## The Department's Violation of the Garland Directive

53.     The Department's failure to timely or otherwise produce non-exempt records responsive to DFI's First and Second Requests directly violates the Garland Directive regarding the FOIA obligations of departments and agencies within the executive branch of the federal government, including the Department.

54.     Lastly, most, if not all, communications from DFI to the Department after June 2022 originated from Florida, as DFI's then-Senior Counsel with primary responsibility for DFI's FOIA efforts resided in Florida at that time (and continues to do so).

### FIRST CAUSE OF ACTION
### Violation of FOIA, 5 U.S.C. § 552
### (Wrongful Withholding by the Department of
### Non-Exempt Records Responsive to First Request)

55.     DFI repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth below.

56.     Through its First Request, DFI properly requested records within the possession, custody, and control of the Department.

57.     The Department is a federal agency subject to FOIA's statutory provisions and is obligated to provide, in a timely manner, all non-exempt records responsive to DFI's First Request.  In the event that the Department

withholds any responsive records, it must provide a lawful reason for withholding those records in response to a FOIA request.

58.   After the passage of 527 days, the Department has provided no such lawful reason for withholding responsive records and has demonstrably ignored DFI's First Request, the Department's statutory obligations under FOIA, and the Garland Directive.

59.   By failing to provide non-exempt records responsive to DFI's First Request, the Department is wrongfully withholding agency records lawfully requested by DFI in violation of the Department's statutory FOIA obligations.

60.   DFI is thus entitled to declaratory and injunctive relief requiring the Department to produce promptly any and all records responsive to the First Request.

<u>**SECOND CAUSE OF ACTION**</u>

<u>**Violation of FOIA, 5 U.S.C. § 552**</u>
**(Wrongful Withholding by the Department of
Non-Exempt Records Responsive to Second Request)**

61.   DFI repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth below.

62.   Through its Second Request, DFI properly requested records within the possession, custody, and control of the Department.

63.     The Department is a federal agency subject to FOIA's statutory provisions and is obligated to provide, in a timely manner, all non-exempt records responsive to DFI's Second Request.  In the event that the Department withholds records responsive to a FOIA request, it must provide a lawful reason for withholding records.

64.     After the passage of 527 days, the Department has provided no such lawful reason for withholding all but four responsive records and has demonstrably ignored DFI's Second Request, the Department's statutory obligations under FOIA, and the Garland Directive.

65.     By failing to provide non-exempt records responsive to DFI's Second Request, the Department is wrongfully withholding agency records lawfully requested by DFI in violation of the Department's statutory FOIA obligations.

66.     DFI is thus entitled to declaratory and injunctive relief requiring the Department to produce promptly any and all records responsive to DFI's Second Request (besides the four already produced).

**WHEREFORE**, DFI respectfully requests that this Court:

   a. Assume jurisdiction in this matter and maintain jurisdiction until the Government complies with its statutory FOIA production obligations and any and all orders of this Court;

b. Declare the Government in violation of FOIA and order it to conduct immediately a records search or searches reasonably calculated to identify all records responsive to DFI's First and Second Requests;

c. Order the Government to produce, within twenty days of the Court's order or by other such date as the Court deems appropriate, any and all records responsive to DFI's First and Second Requests;

d. Enjoin the Government from continuing to withhold any and all non-exempt records responsive to DFI's First and Second Requests;

e. Award DFI its fees, costs, disbursements and expenses, including reasonable attorney's fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E)(i); and

f. Grant DFI equitable and such other relief as this Court may deem just and proper.

Dated this 5th day of September, 2023, at Titusville, Florida.

Respectfully submitted,

**DEFENSE OF FREEDOM INSTITUTE FOR POLICY STUDIES, INC.**

Martha A. Astor
FL Bar No.: 1039011
323 S. Washington Avenue
Suite 9
Titusville, FL 32796
Telephone: (321) 390-2707
Email: martha.astor@dfipolicy.org

/s /Donald A. Daugherty, Jr.
Donald A. Daugherty, Jr.
(*pro hac vice* to be sought)

24

1455 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC  20004
Telephone:  (414) 559-6902
Email:  don.daugherty@dfipolicy.org

*Counsel for the Defense of Freedom*
*Institute for Policy Studies, Inc.*

25