**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DEFENSE OF FREEDOM**
**INSTITUTE FOR POLICY**
**STUDIES, INC.,**

          **Plaintiff,**

v.                                                               Case No: 6:23-cv-1695-PGB-EJK

**US DEPARTMENT OF**
**EDUCATION,**

          **Defendant.**
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Dismiss Or, Alternatively, to Transfer (Doc. 13 (the "**Motion to Dismiss**")), Plaintiff Defense of Freedom Institute for Policy Studies, Inc.'s ("**DFI**") response in opposition (Doc. 17 (the "**Response**")), and Defendant's reply thereto (Doc. 23). Upon consideration, the Motion to Dismiss is due to be granted.[1]

## I.   BACKGROUND[2]

On September 5, 2023, DFI filed its two-count Complaint against Defendant U.S. Department of Education ("**Department**"), asserting violations of the

---

[1] Defendant filed a nearly identical Motion to Dismiss Or, Alternatively, to Transfer in Case No. 23-cv-1515, which is also before the undersigned. (Case No. 23-cv-1515-PGB-EJK, Doc. 26).

[2] This account of the facts comes from DFI's Complaint (Doc. 1), which the Court accepts as true for the purposes of this Motion to Dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Freedom of Information Act ("**FOIA**"), 5 U.S.C. § 552 *et seq*. (*See generally* Doc. 1).

DFI is a corporation founded "to defend and advance freedom and opportunity for every American family, student entrepreneur, and worker, and to protect civil and constitutional rights at school and in the workplace." (*Id.* ¶ 8). In order to fulfill its mission, DFI's work involves, among other things, "submitting FOIA requests to federal agencies to obtain records related to the consideration and implementation of policies imposed by the federal government and its officials on the American people, and then posting records produced by the agencies online for public review." (*Id.*). DFI is "organized and existing under the laws of the Commonwealth of Virginia" with its "registered agent . . . located at 250 Browns Hill Court, Midlothian, VA, 23114." (*Id.*). The headquarters of Defendant are in Washington, D.C. (*Id.* ¶ 9). DFI asserts that "[v]enue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) [the FOIA-specific venue provision] because DFI resides in the District, including maintaining an office in Titusville, Florida." (*Id.* ¶ 6).

On March 28, 2022, DFI served two FOIA requests on the Department, which has failed to provide hardly any responsive documents over the seventeen months prior to this lawsuit being filed. (*See generally* Doc. 1). Essentially, each request "seek[s] records relating to the Department's role in diluting the federal Desegregation of Public Education program (the "**program**"), the focus of which the Department has changed to 'sex desegregation' and other forms of 'equity-

2

based' social agendas, including instruction on systemic racism and thwarting parental rights." (*Id.* ¶ 2). DFI contends that "[m]illions of taxpayer dollars have flowed from the Department in grants to 'Equity Assistance Centers,' whose mission is to further the program's new focus." (*Id.*). Such a "shift not only expands the program beyond its original purpose—namely, assisting schools in achieving and ensuring racial desegregation—it does so by exceeding the Department's legal authority." (*Id.*). Therefore, the aforementioned disclosure requests "are calculated to demonstrate the Department's failure to stay within statutory boundaries and its own guidelines for a program with an important, focused mission." (*Id.* ¶ 3). DFI further opines that the "Department's utter failure to provide a complete production of records responsive to DFI's FOIA requests underscores the apparent, impermissible overreach by the Department." (*Id.*).

DFI's first FOIA request to the Department on March 28, 2022 "was for particular records relating to the Department's award of grants to and cooperative agreements with 'Equity Assistance Centers.'" (*Id.* ¶ 12). Specifically, DFI's goal with regard to the release of these records was to "inform the American people about the Department's diversion of funding directed at racial desegregation of schools to expanding and refocusing the program on new 'equity-based' social agendas relating to, for example, gender and sexual preferences." (*Id.* ¶ 15). The Department acknowledged receipt of DFI's request and notified DFI of an intent "to provide responsive records on a rolling basis." (*Id.* ¶¶ 16, 29). Ultimately however, 527 days had passed since the first request, and notwithstanding "DFI's

3

efforts to assist the Department [in producing the related records] by meeting with its representatives and clarifying the scope of the request," no records had been produced related to DFI's first FOIA request. (*Id.* ¶¶ 13, 27–30).

Also on March 28, 2022, DFI submitted a second FOIA request to the Department. (*Id.* ¶ 31). Like the first request, the second request "was for particular records relating to the Department's award of grants to and cooperative agreements with 'Equity Assistance Centers,' but . . . focused on the Department's Office of Elementary and Secondary Education ('OESE'), which has direct responsibility for managing the 'Equity Assistance Center' grant program." (*Id.* ¶ 32). Again, despite the passage of 527 days and the Department's continual representation "that production of responsive records was in process," the Department has only produced four records in response to DFI's second FOIA request. (*Id.* ¶¶ 33–52).

Ultimately, on September 5, 2023, DFI instituted this action by filing the instant Complaint seeking judicial review of the aforementioned matters. (Doc. 1). Defendant moved to dismiss for improper venue or, alternatively, to transfer the case to the District Court for the District of Columbia pursuant to 28 U.S.C § 1404(a). (Doc. 13). DFI filed its response in opposition (Doc. 17), and the matter is now ripe for review.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss an action based on "improper venue." FED. R. CIV. P. 12(b)(3). When a

4

defendant moves to dismiss on grounds of improper venue, the plaintiff has the burden of demonstrating that venue in the forum is proper. *E.g.*, *Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*, No. 6:07-cv-1626, 2008 WL 4058014, at *1 (M.D. Fla. Aug. 27, 2008); *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). In ruling on such a motion, the court must accept all allegations in the plaintiff's complaint as true if uncontroverted by defendant's evidence. *Delong*, 840 F.2d at 845. "If an allegation in the complaint is challenged, 'the court may examine facts outside of the complaint to determine whether venue is proper' and 'may make factual findings necessary to resolve motions to dismiss for improper venue.'" *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1290 (N.D. Ala. 2016) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)). "Where conflicts exist between allegations in the complaint and evidence outside the pleadings, the court 'must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Capital Corp.*, 2008 WL 4058014, at *1 (quoting *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)).

## III.  DISCUSSION

### A.  Motion to Dismiss for Improper Venue

Defendant initially argues that the case must be dismissed because venue is improper in the Middle District of Florida. (Doc. 13, pp. 9–13).[3] Essentially,

---

[3] In the alternative, Defendant contends that the matter should be transferred to the District of Columbia pursuant to 28 U.S.C. § 1404(a). (*See* Doc. 13). However, since the Court finds venue improper, it does not address transfer under § 1404(a). *See infra* Section III.B.

5

Defendant's argument is that Plaintiff does not "reside" in the Middle District for purposes of FOIA's venue provision, 5 U.S.C. § 552(a)(4)(B). (*Id.*). For the forthcoming reasons, the Court agrees.

Typically, venue for civil actions in federal courts is governed by 28 U.S.C. § 1391, "[e]xcept as otherwise provided by law." 28 U.S.C. § 1391(a). Prior to 2011, § 1391(c) defined "residency" "[f]or purposes of venue *under this chapter*." 28 U.S.C. § 1391(c) (2010) (emphasis added). However, in 2011, Congress amended § 1391(c) to apply "for *all* venue purposes." 28 U.S.C. § 1391(c) (emphasis added). Legislative history clarifies congressional intent with regard to this amendment, highlighting that § 1391(c)'s definition of residence "appl[ies] to all venue statutes, *including venue provisions that appear elsewhere in the United States Code*." H.R. REP. NO. 112-10, at 20 (2011) (emphasis added). For purposes of the "residence" of a plaintiff-entity, § 1391(c) states that it "shall be deemed to reside . . . only in the judicial district in which it maintains its principal place of business. *Id.* § 1391(c)(2). However, if the entity is a defendant, it may reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.*

On the other hand, venue in a FOIA action is governed by 5 U.S.C. § 552(a)(4)(B), a statute-specific venue provision. The FOIA venue provision provides that venue is proper in any district where either: (1) the plaintiff resides;

6

(2) the plaintiff has its principal place of business; (3) the relevant records are located; or (4) in the District of Columbia. 5 U.S.C. § 552(a)(4)(B).[4]

The crux of the parties' dispute implicates whether the general venue statute can supply the FOIA-specific venue provision, 5 U.S.C. § 552(a)(4)(B), with the definition of "residency." (*Compare* Doc. 13, pp. 9–13, *with* Doc. 17, pp. 5–11). Plaintiff argues that it cannot. Specifically, Plaintiff contends that venue for a FOIA action is governed exclusively by its own special venue provision and thus, the generic provisions provided for by 28 U.S.C. § 1391(c) are irrelevant. (*See* Doc. 17, pp. 5–11).[5] While the Court agrees that 5 U.S.C. § 552(a)(4)(B) governs proper venue in a FOIA action, the Court ultimately disagrees that the general venue statute cannot *supplement* the FOIA-specific venue provision with the meaning of a term that the respective statute, and interpreting case law, has left undefined.

---

[4] Considering DFI solely relies on the initial prong of plaintiff's residence to demonstrate proper venue, the Court will tailor its argument accordingly. Nonetheless, DFI does not set forth any allegations that the relevant records are located here in the Middle District, and the fourth prong simply does not apply as this Court is not in the District of Columbia.

[5] Plaintiff initially cites to *Freedom Watch, Inc. v. U.S. Department of State*, No. 13-CV-419-OC-22PRL, 2014 WL 12784907, at *1 (M.D. Fla. Apr. 14, 2014), to support its contention that the generic venue statute does not govern actions subject to specific statutory venue provisions. (*See* Doc. 17, pp. 5–6). As Plaintiff points out, in *Freedom Watch*, the court highlighted "that venue for civil actions alleging a FOIA violation is governed by 5 U.S.C. § 552(a)(4)(B), and not the general venue provision found at 28 U.S.C. § 1391(e)." *Id.*; 2014 WL 12784907, at *3. However, the subject provision in the instant case is § 1391(c), not (e). Thus, such a distinction renders any reliance on *Freedom Watch* unpersuasive for a few reasons. Moreover, it provides an inherent reason why "*Freedom Watch* made no reference to the 2011 Amendment" to § 1391(c). (*See* Doc. 17, p. 6).

For one, § 1391(e) provides far more than the definition for an undefined term. *See* 28 U.S.C. § 1391(e). Section 1391(e) sets forth proper venue in various locations for actions where the defendant is an officer or employee of the United States. *See id.* Thus, reading § 1391(e) in conjunction with § 552(a)(4)(B) would fully supplant venue as provided for by the FOIA-specific venue provision. Whereas, § 1391(c) merely defines a term—explicitly "[f]or all venue purposes"—that could provide clarity to the meaning of one word, "resides," in § 552(a)(4)(B).

7

First, Plaintiff cites to a single case that squarely addresses the instant issue: *Western Watersheds Project v. National Park Service*, No. 21-CV-00219, 2021 WL 5828028, at *1 (D. Idaho Dec. 8, 2021). (Doc. 17, pp. 6–7). Therein, entity-plaintiff sued defendant, a federal agency, in the District of Idaho for failing to respond to a number of FOIA requests. *Western Watersheds*, 2021 WL 5828028, at *1. The agency defendant moved to transfer venue under 28 U.S.C § 1404(a) for various reasons. *Id.* In assessing the transfer motion, the court was tasked with addressing where the action may have initially been brought. *Id.* at *2–3.

Since § 552(a)(4)(B) governs venue for FOIA actions, the *Watersheds* court similarly analyzed where the entity-plaintiff properly "resides" under the statute. *Id.* Defendant contended that an entity-plaintiff could reside in "more than one judicial district for purposes of venue in FOIA cases," and thus, Utah was also a proper venue because plaintiff "works in Utah, routinely makes FOIA requests in Utah, frequently litigates in Utah . . . and otherwise interacts with both the state and federal land management agencies located in Utah on a regular basis." *Id.* at *2. To the contrary, the *Watersheds* plaintiff argued it "resides" only in Idaho, "the judicial district in which it maintains its principal place of business"—which is the universal definition of an entity-plaintiff's residence "for all venue purposes" under 28 U.S.C. § 1391(c)(2). *Id.*

Ultimately, the *Watersheds* court disagreed with plaintiff's argument that § 1391(c) supplied FOIA's venue provision, § 552(a)(4)(B), with the definition of "resides." *See id.* at *2–3. The court reasoned that "[w]hile a plaintiff may at times

8

reside, and have its principal place of business, in the same location, equating plaintiff's principal place of business with its place of residence would render portions of the FOIA venue provision redundant and thus contrary to a fundamental rule of statutory interpretation." *Id.* at *2.[6] Thus, the court concluded that "resides" referred to "any place where [the entity-plaintiff] has substantial contacts." *Id.* at *3.

This Court finds that the holding in *Watersheds* is quite distinguishable for a number of reasons. For one, *Watersheds* is one case from the District of Idaho and thus, is not binding. Plaintiff has not presented any additional case law with the same, or even a similar, holding to further persuade the Court of its position. Moreover, and perhaps most problematic, the *Watersheds* court based its definition of "resides" on a prior Supreme Court case, *Pure Oil Co. v. Suarez*, 384 U.S. 202, 204–05 (1966), that interpreted the definition of residency as it applied to a corporate *defendant* in *1966*. Paradoxically, however, the *Pure Oil* court ultimately supplied a special venue provision found in the Jones Act with the then-definition of "resides" from § 1391(c)—which is exactly what DFI asks this Court *not* to do here with FOIA. *Id.* at 204–07; (Doc. 17, pp. 5–11; Doc. 23, p. 2).[7]

---

[6] The Court does not necessarily agree with this contention, to be discussed *infra*. In sum, surplusage is not the only canon in which the Court must consider. Moreover, the term still carries independent meaning for plaintiffs that are *individuals*—and thus, such an interpretation aligns with FOIA's intention to provide plaintiff-requesters, especially those that do not have the same resources as legal entities, with convenient venue choices. (*See* Doc. 23, p. 4).

[7] In any event, even if the Court were to apply DFI's proposed interpretation of "resides" that stems from *Pure Oil* and the then-definition of a corporate defendant's residency under § 1391(c), DFI fails to demonstrate that it has substantial contacts to the Middle District. To set

9

Thus, even though the Court here is tasked with assessing a venue provision that implicates a corporate *plaintiff's* residence, the analysis set forth in *Pure Oil* only bolsters this Court's decision. The *Pure Oil* court analyzed the residence of a corporate defendant under a specific venue provision in the Jones Act. *See generally* 384 U.S. 202. The Jones Act contained a special venue provision that provided as follows: "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 46 U.S.C. § 688 (1964). The underlying question presented in *Pure Oil* was akin to that here: whether the definition of residence provided by the general venue statute, § 1391(c), applied to the Jones Act. 384 U.S. 202. At the time, § 1391(c) had been redefined and expanded such that "[a] corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." *Id.* at 203–04; 28 U.S.C. § 1391(c) (1964). The *Pure Oil* court noted that while statutory history did not elucidate the "intended effect of § 1391(c) on special venue provisions, the liberalizing purpose underlying its enactment and the generality of its language support the view that it applies to all venue statutes using residence as a criterion, at least in the absence of contrary

forth its "substantial contacts," DFI primarily emphasizes the fact that the lead attorney on this case lives and works in Titusville. (Doc. 17, pp. 2–4, 9–10). However, without more, such an argument falls flat. DFI neither cites to case law nor references relevant authority to bolster its position that an attorney's living arrangement confers contacts sufficient for "residency" of a corporation and thus, venue of an action. (*See* Doc. 23, p. 6). If this Court were to interpret "substantial contacts" based on the residence of a lead attorney in a case, companies would simply be able to put attorneys on cases that live in districts in which they wish to proceed. In other words, forum shopping would be rampant.

10

restrictive indications in any such statute." 384 U.S. at 204–05. As such, *Pure Oil* concluded that the general venue statute's definition of corporate residence should be read into the venue provision within the Jones Act. *See id.* at 207 ("[T]he basic intent of the Congress is best furthered by carrying the broader residence definition of § 1391(c) into the Jones Act."). Such is exactly what the Court intends to do in the case at bar—except now, the definition of residency itself has changed, and the Court has crystal-clear intent from Congress that § 1391(c) is meant to "apply to all venue statutes, including venue provisions that appear elsewhere in the United States Code." H.R. REP. NO. 112-10, at 20 (2011).

Next, Plaintiff analogizes the instant matter to *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258, 263 (2017), which discussed the definition of residency for purposes of proper venue in patent infringement suits. (Doc. 17, pp. 8–9). Therein, the Supreme Court held that the general provisions of § 1391(c) did not control the meaning of terms in the patent-specific venue provision. *See generally TC Heartland*, 581 U.S. 258. However, the Court finds the circumstances in *TC Heartland* quite distinct from the ones at bar.

To provide context, *TC Heartland* similarly involved a dispute over the interpretation of "resides" under the patent-specific venue provision, 28 USC § 1400(b). Section 1400(b) provided that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant *resides*, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 USC § 1400(b) (emphasis added). The Supreme Court in *TC*

11

*Heartland* noted that the issue involved whether the 2011 amendment to § 1391(c)'s definition of residency—to apply "for all venue purposes" versus those "under this chapter"—supplanted the longstanding definition of "resides" for purposes of § 1400(b). Since 1957, in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957), the Supreme Court had "definitively and unambiguously held that the word 'reside[nce]' in § 1400(b) has a particular meaning as applied to domestic corporations: It refers only to the State of incorporation." *TC Heartland*, 581 U.S. at 267–68 (citing *Fourco*, 353 U.S. 222). As such, the *TC Heartland* court concluded that Congress did not intend to change the established interpretation of "resides" under § 1400(b) by amending the § 1391(c) default definition of residency in 2011. 581 U.S. at 267–69.[8] In other words, *TC Heartland* inherently held that § 1391(c) did not supply the patent-specific venue provision with the meaning of the term "resides." *See id.*

For one, the Supreme Court has long made clear that patent exists in a world of its own. *See, e.g.*, *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942);

---

[8] Moreover, the court in *TC Heartland* acknowledged that at the time *Fourco* was decided in 1957, § 1391(c) read "for venue purposes." *TC Heartland*, 581 U.S. at 268–69. The 2011 amendment to § 1391(c) merely added the word "all" to the *original* version of the general venue statute. *Id.* Thus, the *TC Heartland* court found no "material difference between the two phrasings." *Id.* In other words, if § 1400(b) wasn't subject to § 1391(c)'s default definition of residency when *Fourco* was decided in 1957, *TC Heartland* held that it shouldn't be now. *See id.* Further, even if congressional intent of § 1391 was always to encompass all venue purposes, Congress has never expressed an intent to alter the *original* meaning of § 1400(b)— which has been defined by almost a century of precedent. *TC Heartland*, 581 U.S. at 268–69 ("The current version of § 1391 does not contain any indication that Congress intended to alter the [original] meaning of § 1400(b) . . . .§ 1391's saving clause expressly contemplates that certain venue statutes may retain definitions of 'resides' that conflict with its default definition."). As such, § 1391(c) has no bearing on patent venue in particular because the confines of § 1400(b) have long been "otherwise provided by law." *See* § 1391(c).

*Fourco*, 353 U.S. 222. Dating back to 1942 in *Stonite*, the Supreme Court explicitly declared that § 1400(b)'s predecessor was "the exclusive provision controlling venue in patent infringement proceedings." 315 U.S. at 564. And, since then, case law has clearly set forth the definition of an entity's "residence" for purposes of § 1400(b) and patent venue—the entity's state of incorporation. *See, e.g.*, *Fourco*, 353 U.S. 222. Thus, § 1391(c) cannot supplement the patent-specific venue provision with the generic definition of "resides" because the confines of § 1400(b) are unequivocally "otherwise provided by law." *See* § 1391(c); *TC Heartland*, 581 U.S. at 269 (noting that § 1391(c) now "expressly contemplates that certain venue statutes may retain definitions of 'resides' that conflict with [§ 1391(c)'s] default definition"). Alas, such is simply not the case with the venue provision in FOIA.

The aforementioned having been distinguished, the Court is left at a crossroads in interpretating the meaning of "resides" under 5 U.S.C. § 552(a)(4)(B). So, in order to reach its conclusion, the Court must embark on a journey of statutory interpretation. "The starting point for all statutory interpretation is the language of the statute itself" in order to determine whether its meaning is clear. *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999); *see Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002).

If a statute is susceptible to more than one reasonable interpretation, and is thus ambiguous, "courts are left to determine [the statute's] meaning by looking to the legislative history and employing . . . canons of statutory construction." *Lindley v. F.D.I.C.*, 733 F.3d 1043, 1055–56 (11th Cir. 2013) (quoting *U.S. Steel Mining Co.*

13

*v. Dir., OWCP*, 719 F.3d 1275, 1283 (11th Cir.2013)). One "pertinent canon is the presumption against surplusage: we strive to give effect to every word and provision in a statute when possible." *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1247 (11th Cir. 2008). "The conclusion that two statutes conflict, however, is one that courts must not reach lightly. If any interpretation permits both statutes to stand, the court must adopt that interpretation, 'absent a clearly expressed congressional intention to the contrary.'" *Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1299 (11th Cir. 2010) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)).

Considering "resides" under § 552(a)(4)(B) is not defined and is clearly susceptible to more than one meaning, the statutory language is ambiguous.[9] And, unlike with the patent-specific venue provision § 1400(b), the definition of residency for purposes of § 552(a)(4)(B) has not been "otherwise provided by law." § 1391 (addressing the universal applicability of the general venue statute "[e]xcept as otherwise provided by law"). Accordingly, in construing FOIA's venue provision, the Court must "employ canons of construction which embody sound generalizations about Congressional intent." *Garcia*, 540 F.3d at 1247–48.

---

[9] The Court acknowledges DFI's contention that it is unaware of any other case finding 5 U.S.C. § 552(a)(4)(B) "ambiguous or resorting to legislative history to interpret it." (Doc. 17, pp. 10–11). However, this is partly the issue—the meaning of "resides" under § 552(a)(4)(B) has yet to be addressed, much less defined, by case law and thus, there is practically no authority that discusses the term at all. FOIA's venue provision does not provide a definition of "resides" nor has one been supplied by decades of precedent, unlike with regard to the patent specific venue provision § 1400(b). Therefore, the bottom line is that the Court is left to decipher the meaning of the term itself, in some way or another, by looking outside § 552(a)(4)(B).

Legislative history makes clear that Congress intended § 1391(c)—and thus the definition of residency—to "apply to all venue statutes, including venue provisions that appear elsewhere in the United States Code." H.R. REP. NO. 112-10, at 20 (2011); (*see* Doc. 23, pp. 2–3). Moreover, the Court can easily interpret § 1391(c) in tandem with § 552(a)(4)(B), which permits both statutes to hold their meaning. *See, e.g.*, *Miccosukee Tribe*, 619 F.3d at 1299.

Therefore, assuming the Court were to supply § 552(a)(4)(B) with the general definition of "residency" provided by § 1391(c), DFI would "reside" where it has its principal place of business.[10] However, Plaintiff does not make an argument that it maintains its principal place of business in the Middle District. Instead, it argues that it has "substantial contacts," and thus "resides," in the Middle District because it "maintain[s] an office in Titusville, Florida" where the "attorney with primary responsibility for all of its FOIA matters" works and lives. (Doc. 1, ¶ 6; Doc. 17, p. 10). DFI further contends it is "registered to business in Florida" and pays taxes to the state. (Doc. 17, p. 10). Nevertheless, the Court does not find that such activity is sufficient to deem the Middle District DFI's "principal place of business."[11] In fact, as Defendant points out, DFI advertises—via its own letterhead, email correspondence, social media, and so forth—as if its principal place of business is in the District of Columbia. (*E.g.*, Doc. 1-3, pp. 2, 15, 18, 20, 40

---

[10]  *See supra* note 6.

[11]  Moreover, as indicated previously, the Court is not even persuaded that DFI has "substantial contacts" in the Middle District. *See supra* note 7.

(stating repeatedly that its address, and that of its then senior counsel, is "1455 Pennsylvania Avenue NW, Suite 400, Washington, DC 20004"); Doc. 13, pp. 4–7, 12 n.6).

In the alternative, if the Court were not to incorporate the definition of resides from § 1391(c) into § 552(a)(4)(B), the Court would instead be inclined to define an entity-plaintiff's "residency" as its state of incorporation. At the time of FOIA's enactment in 1966, it had been well-settled that "for purposes of the general venue statutes a corporation resided only in its state of incorporation." *See Flowers Indus., Inc. v. F.T.C.*, 835 F.2d 775, 777 (11th Cir. 1987) (interpreting "the meaning of residence when the § 1391(e)(4) plaintiff is a corporation"); *Shaw v. Quincy Mining Co.*, 145 U.S. 444, 449 (1892) ("In the case of a corporation, the reasons are, to say the least, quite as strong for holding that it can sue and be sued only in the state and district in which it has been incorporated . . . . [Such] has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicile, the habitat, the residence, the citizenship of the corporation can only be in the state by which it was created, although it may do business in other states whose laws permit it."). Moreover, "a corporation always resides only in the state of incorporation for purposes of a *specific* venue statute unless there is some contrary indication." *See Flowers*, 835 F.2d at 777 (citing *Tenneco Oil Co. v. EPA*, 592 F.2d 897, 899 (5th Cir. 1979)).[12]

---

[12] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

16

The instant Plaintiff, DFI, is "organized and existing under the laws of the Commonwealth of Virginia" with its "registered agent . . . located at 250 Browns Hill Court, Midlothian, VA, 23114." (Doc. 1, ¶ 8). It's place of incorporation is thus "in the Richmond, Virginia area." (Doc. 17, p. 3). Therefore, even if the Court were to alternatively define "resides" for purposes of § 552(a)(4)(B) as a plaintiff-entity's state of incorporation, venue in this case would still not be proper in the Middle District.

Ultimately, the reality is that no matter which of the aforementioned interpretations of "resides" the Court attributes to § 552(a)(4)(B), DFI does not reside in the Middle District. Thus, venue here is improper.

### B.  Transfer Pursuant to 28 U.S.C. § 1406

Pursuant to 28 U.S.C. § 1406(a), if a district court finds venue improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Considering § 552(a)(4)(B) provides that venue for a FOIA action is always proper in the District of Columbia—and the fact that the FOIA requests have been pending for an extended period of time—the Court will transfer the matter accordingly in the interest of justice. *See* § 1406(a).

### IV.  CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

17

1. Defendant's Motion to Dismiss for improper venue (Doc. 13) is **GRANTED**.

2. The Clerk of Court is **DIRECTED** to transfer this matter to the District Court for the District of Columbia, where venue properly lies pursuant to 5 U.S.C. § 552(a)(4)(B), and close the case.

**DONE AND ORDERED** in Orlando, Florida on March 19, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties